IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICK BALESTRIERI,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION<br>NO. 19-5195 |

<u>**MEMORANDUM OPINION**</u>

**Schmehl, J.** <u>/s/ JLS</u>                                                                 July 19, 2021

## I.     **<u>INTRODUCTION</u>**

Plaintiff, Rick Balestrieri, brings this negligence action against the United States Postal Service, an independent agency of United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"). Before the Court is the Motion for Summary Judgment of Defendant, the parties' Joint Statement of Undisputed Material Facts, Plaintiff's opposition to the motion, and Defendant's reply.

## II.    **<u>FACTUAL BACKGROUND</u>**

On September 12, 2016, Plaintiff, Rick Balestrieri, was employed by Cundari Trucking Company, Inc. ("Cundari") as a tractor-trailer driver. (JSF at ¶ 1(a-b).) Mr. Balestrieri worked under a contract between Cundari and the United States Postal Service ("USPS") to haul trailers containing mail between the USPS Processing and Distribution Center in Philadelphia ("Philadelphia P&DC") and the Levittown Post Office ("Levittown"). (JSF at ¶ 1(c).) The contract between Cundari and USPS ("Contract") provided, in relevant part, that Cundari drivers were required to "load, transport and unload" mail between Philadelphia P&DC and regional post offices, including Levittown. (JSF at ¶ 2(b-c).) Drivers were also required to "transport mail

loaded on pallets, in wheeled containers, metal and non-metal containers, in sacks and loose loaded"—all owned or leased by USPS—via Cundari trucks. (JSF at ¶ 2(d).) This included transporting Bulk Mail Carriers ("BMCs")—"heavy duty aluminum container[s] that weigh 385 pounds." (JSF at ¶ 3(b).) The Contract subjected Cundari to certain USPS rules and regulations regarding mail handling, however USPS is not certain Cundari was provided with a copy of this handbook. (JSF at ¶ 3.) According to USPS, a USPS employee was in charge of inspecting BMCs prior to putting mail into the container to ensure it was in working order. (JSF at ¶ 7.) Upon identifying a defect in the BMC, USPS employees would affix a "red tag" for identification. (JSF at ¶ 8.)

On September 12, 2016, Balestrieri drove a truck to Philadelphia P&DC and picked up a previously loaded trailer and drove the truck and trailer to Levittown, arriving around 3:00 a.m. (JSF at ¶¶ 11-16.) When Balestrieri arrived in Levittown, only two USPS employees, Sue George and Dave Simmons, were present at the facility. (JSF at ¶¶ 17-20.) Balestrieri successfully unloaded about 95% of the trailer when he encountered a BMC "'overloaded' with mail and weighing a few thousand pounds, in the nose of the trailer." (JSF at ¶¶ 20-23.) Balestrieri rolled the BMC approximately 50 feet to the edge of the dock plate, where the BMC began tipping due to a missing left front wheel. (JSF at ¶ 24.) In an attempt to steady the BMC, Balestrieri's "body twisted to the left, thereby causing his right knee to twist[,]" and the BMC briefly pinned Balestrieri to the trailer wall before crashing into the wall and coming to rest. (JSF at ¶ 26.)

Balestrieri searched the trailer for the missing wheel but was unable to locate one. (JSF at ¶ 34.) Neither George nor Simmons witnessed the accident, however, Balestrieri testified that he told George he was hurt. (JSF at ¶¶ 28, 30.) Following the incident, Balestrieri did not request or

receive medical treatment from USPS. (JSF at ¶ 33.) George testified that she saw Balestrieri limping and asked him what happened, but George had difficulty understanding Balestrieri as she is deaf, and his facial hair impeded her ability to read his lips. (JSF at ¶ 29.)

After the incident, Balestrieri finished unloading the remainder of the first trailer and returned to Philadelphia P&DC to retrieve his second trailer where he testified that he informed a USPS employee that he was injured and required assistance with the second trailer. (JSF at ¶¶ 35-36.) No USPS employee could recall this conversation and no injury was reported in the USPS accident reporting system. (JSF at ¶¶ 37-43.) There was no evidence of the BMC being red-tagged on that date. (JSF at ¶ 44.) Balestrieri completed his second run but contacted his direct supervisor as he was unable to complete the third trip and left work three hours prior to completing his shift. (JSF at ¶ 45.) In the days following the incident, Balestrieri informed Cundari and Cundari's insurance carrier that he was injured by a BMC missing a wheel. (JSF at ¶ 45.)

On or about September 24, 2016, Balestrieri informed Cundari that he was unable to continue working. (JSF at ¶ 46.) Initially, Balestrieri tried to treat his injury with ibuprofen and ice, but when that was not successful, he sought professional medical treatment on September 27, 2016. (JSF at ¶ 47.) Medical records from that visit reflect that Balestrieri reported that he injured his right knee "lifting [an] object and . . . twisting his foot[.]" (JSF at ¶ 47.) At his next medical appointment with a different provider on October 31, 2016, records reflect that Balestrieri reported that "[h]e was moving a heavy fan off of a truck when he caught his leg and twisted it." (JSF at ¶ 48.) Balestrieri received worker's compensation benefits that terminated following a settlement totaling $95,000 in early 2018. (JSF at ¶ 50-51.)

This action commenced on November 5, 2019, with the filing of a complaint on behalf of Balestrieri, who asserted a claim of negligence under the Federal Tort Claims Act ("FTCA"), and his wife, Miriam Balestrieri, who asserted a claim for loss of consortium. (ECF No. 1.) Mrs. Balestrieri's claim for loss of consortium was dismissed with prejudice. (ECF No. 5.)

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## IV. DISCUSSION

Under the FTCA, the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. *See United States v. Olson*, 546 U.S. 43, 44 (2005) (interpreting FTCA provision to mean that "the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort). To determine liability under the FTCA, the court looks to the substantive tort law in the state in which the claim arose, here the Commonwealth of Pennsylvania. 28 U.S.C. §§ 1346(b)(1), 2672. *See Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978).

To prove negligence in Pennsylvania, "a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006). USPS argues that Balestrieri cannot prove the requisite elements of negligence and it is therefore entitled to summary judgment. (ECF No. 23 at 14.)

### A. DUTY OF CARE AND BREACH OF DUTY

USPS urges the Court to assess Balestrieri's negligence claim under the Restatement Second of Torts Section 388, which requires USPS to take reasonable care to warn Balestrieri of inherently dangerous conditions. (ECF No. 23 at 15; ECF No. 26 at 7-8.) Balestrieri maintains that he has satisfied his burden under section 388. Further, he argues that he has also met the standard set forth in section 392 of the Restatement, which, if applicable, would assign a higher standard of care to Defendant. (ECF No. 24 at 7-10.)

Section 388 provides:

> One who supplies . . . a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the owner

> or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be dangerous.

*Amato v. Bell & Gossett*, 116 A.3d 607, 623 (Pa. Super. 2015) (quoting Restatement (Second) of Torts § 388 (Am. L. Inst. 1965)).

Pennsylvania also applies section 392 for the negligent supply of a chattel for a business purpose:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Lambert v. Pittsburgh Bridge & Iron Works*, 323 A.2d 107, 109 n.2 (Pa. Super. 1974). Section 392 is intended to apply "to certain classes of carriers, shippers of goods, and '[p]ersons . . . supplying chattels for others to use for the supplier's business purpose in a number of situations . . .'" *Id*. at 60-61 (quoting *Court v. Pittsburgh and Lake Erie Railroad Co.*, 190 A. 2d 139 (Pa. 1963) (adopting section 392 as controlling law in Pennsylvania, where a chattel is supplied by a carrier or shipper of goods)). Section 392 imposes a heightened duty on the supplier to reasonably inspect the chattel.

After analyzing the facts of this case, I find that there is a genuine issue of material fact as to whether USPS breached its duty of care to Plaintiff under Section 388 of the Restatement. USPS supplied a chattel, the BMC, to Cundari, Balestrieri's employer. The trailer containing the BMC in question was pre-loaded by USPS employees. Balestrieri picked up the pre-loaded trailer and was unable to inspect its contents until he began the unloading process.

USPS, in its responsibilities in loading the trailer, had reason to know the dangerous risk a three-wheeled BMC could pose to Balestrieri once he began the unloading process. Further, because the BMC was in the last portion of the trailer to be unloaded, USPS had no reason to believe that Balestrieri would realize the BMC's dangerous condition before he began unloading it from the trailer, as he had no way to see the BMC and its wheels. Finally, although USPS points to its contract with Cundari as providing specific warnings of "dangers inherent in moving heavy containers[,]" this does not satisfy its duty to inform Plaintiff of the specific condition of a missing wheel on the BMC. The "red tagging" process would have served a sufficient warning to inform Balestrieri of the BMC's dangerous condition, but no one red-tagged the BMC in question. Therefore, a genuine issue of material fact exists as to whether USPS breached its duty to Balestrieri and Defendant's Motion for Summary Judgment is denied.[1]

### B. CAUSATION AND RES IPSA LOQUITOR

Next, Balestrieri urges this Court to apply the *res ipsa loquitor* doctrine to infer causation in this matter. The *res ipsa loquitor* doctrine "allows juries to infer negligence from the circumstances surrounding the injury." *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d

---

[1] As I have found a genuine issue of material fact exists as to USPS's breach under Section 388 of the Restatement, I do not need to address Plaintiff's argument that USPS is also liable under Section 392 of the Restatement for purposes of the instant motion.

1061, 1071 (Pa. 2006). Pennsylvania has adopted the Restatement (Second) of Torts section 328D:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> > (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> >
> > (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> >
> > (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

*Id.* (quoting the Restatement (Second) of Torts § 328D (Am. L. Inst. 1965)). *See also Gilbert v. Korvette, Inc.*, 327 A.2d 94 (Pa. 1974) (adopting Restatement (Second) of Torts § 328D defining the *res ipsa loquitur* doctrine).

First, in order to meet the *res ipsa* standard, the event in this case must be one which ordinarily does not occur without negligence, that is, Balestrieri encountering a preloaded BMC with a previously unknown missing wheel would not ordinarily occur without negligence on the part of USPS. USPS urges this Court to look at testimony from a USPS employee who has observed a BMC wheel snap off during unloading as evidence that a three-wheeled BMC occurs absent negligence. (ECF No. 23 at 17-18.) However, Balestrieri is not arguing wear and tear of a BMC is necessarily negligence on the part of USPS. He argues that in this specific instance, a BMC was pre-loaded by USPS employees, not red-tagged as missing a wheel (and no wheel was

found in the trailer) and caused an injury while unloading, all of which could not have occurred ordinarily absent USPS negligence in the loading and inspection process. (ECF No. 24 at 10-11.)

Second, Balestrieri must sufficiently eliminate other possible causes of the injury. As Balestrieri points out, he "need not, however, conclusively exclude all other possible explanations . . . [i]t is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation," and this is a question not for the court but best left to the jury. Restatement (Second) of Torts § 328D cmt. e (Am. L. Inst. 1965). USPS argues that as a "simple matter of physics, " it is impossible for Balestrieri to have moved the BMC fifty feet from the nose of the trailer before encountering a problem with it if the BMC only had three wheels. However, USPS produced no expert testimony as to this conclusion, only speculation by USPS employees and their own experiences with a BMC missing a wheel. There remains a genuine issue of material fact as to whether other causes of Plaintiff's injury may exist, thus this issue should be left to the factfinder.

Third, the alleged negligence must have occurred with the scope of USPS's duty to Balestrieri. Balestrieri alleges under both sections 388 and 392 of the Restatement that his injury occurred due to USPS breaching its duty. USPS clearly has a duty to Balestrieri under section 388 (and/or possibly section 392.) Accordingly, I find that there is a genuine issue of material fact as to causation in this matter, and Defendant's motion is denied.

## C. DAMAGES

Finally, Balestrieri demonstrated that he was injured and suffered damages caused by USPS's breach of duty. Balestrieri has stipulated that he will not pursue recovery damages for his left shoulder injury that may or may not be related to the September 12 incident. (ECF No. 24 at 12.) Thus, the only remaining injury at issue is that to his right knee. Medical records support

the conclusion that Balestrieri incurred actual injury and damages because of the BMC unloading incident.

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is denied. An appropriate order follows.